# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:15-CR-166-FDW-DSC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | |
| ISADORE JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Suppress" (document # 17) filed July 1, 2016. The "United States' Response in Opposition to Defendant's Motion to Suppress," Doc. 21, was filed on July 13, 2016. The Court conducted an evidentiary hearing on August 9, 2016.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the record and following an evidentiary hearing, the undersigned respectfully recommends that Defendant's Motion to Suppress be <u>denied</u>, as discussed below.

## I. FACTUAL BACKGROUND AND FINDINGS

In October 2014, Charlotte-Mecklenburg Police Department vice officers were investigating reports of prostitution occurring at Apartment 704 in the Andover Woods apartment complex. Prior to initiating an undercover operation, vice detectives Orlando Ortiz-Trinidad ("Ortiz") and Paul Murphy participated in a briefing conducted by Officer Jelani Patterson and

other officers. The detectives were shown a photograph of Michelle Cintron who was suspected of committing acts of prostitution in the apartment. They were also shown a photograph of Defendant Isadore Johnson. During previous surveillance, officers observed Defendant leave the apartment and stand outside whenever a suspected customer entered. The officers believed that Defendant was acting as a lookout or security for Ms. Cintron. In Ortiz's experience, it is not uncommon for an individual to perform that function outside a premises used for prostitution. The officers were also advised that Defendant may be armed and had previously been observed in possession of a firearm or holster at the apartment complex.

On October 23, 2014 at around noon, an undercover vice officer arrived at the apartment posing as a customer for Ms. Cintron. Detectives Ortiz and Murphy were present conducting surveillance. Prior to the undercover officer entering the apartment, Defendant exited the apartment building accompanied by a small child and two dogs. After the undercover officer entered the apartment, Defendant walked with the child and dogs to a basketball court located in the complex. Murphy observed Defendant watching the apartment from time to time. Ortiz and Murphy were concerned that Defendant may compromise the safety of the operation when the undercover officer communicated the arrest signal from inside the apartment. As the detectives approached the Defendant, Murphy observed the imprint of a gun in his left pocket. The detectives identified themselves. Ortiz then asked Defendant if he had a weapon, and he answered in the affirmative. Defendant also stated that he had identification. At that point, Defendant attempted to reach into his right pocket. The detectives ordered him not to reach into his pocket. Defendant attempted to reach into his pocket a second time. The detectives again ordered him not to reach into his pocket. Ortiz grabbed Defendant from behind and Murphy assisted in placing him on the pavement. Defendant struggled with the detectives and uniformed officers arrived to assist in

placing him in handcuffs. A firearm was seized from Defendant's left pocket. A knife was seized from his right pocket. He was also in possession of two loaded magazines. Defendant complained of injury to his leg. Medic transported him to the hospital where he was later released to police custody. Ms. Cintron was subsequently convicted in state court for violating the local massage ordinance. Defendant was charged with aiding and abetting prostitution.

Defendant was charged by Indictment with possession of a firearm by convicted felon in violation of 18 U.S.C. § 922(g)(1) here.

## II. ANALYSIS

Defendant contends that he was seized by the law enforcement officers in violation of his Fourth Amendment rights.

### A. Reasonable Suspicion Standard

An officer may stop and briefly detain an individual for investigative purposes provided there is "reasonable suspicion" based upon articulable facts that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 21 (1968). "Reasonable suspicion" takes into account the totality of the circumstances, including the information known to the officer and any reasonable inferences that may be drawn there from. United States v. Arvizu, 534 U.S. 266, 273-75 (2002); United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011). Terry recognized that "reasonable suspicion" may be grounded in observations by officers of what appears to be criminal conduct. 392 U.S. at 22-23. The Terry analysis balances the needs of law enforcement and the burden placed upon affected citizens. See United States v. McCoy, 513 F.3d 405, 415 (4th Cir. 2008).

"While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v.

Wardlow, 528 U.S. 119, 123 (2000). An officer must be able to identify "specific and articulable facts which, taken together with rational inferences from those facts," establish a reasonable suspicion of criminal activity. Terry, 392 U.S. at 21. When applying this standard, "[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993); see also Arvizu, 534 U.S. at 273 (permitting "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"(quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

Since the intrusion resulting from an investigative stop is minimal, the reasonable suspicion standard is not an onerous one. See, e.g., United States v. McCoy, 513 F.3d 405, 412-13 (4th Cir. 2008) (experienced officer's observation of vehicles parked briefly in store parking lot where drug sales had previously occurred, then moved to a nearby lot where drug sales had also occurred and where occupant of one vehicle got into the other vehicle for a short time, after which that vehicle left at a high rate of speed as officer approached was sufficient to constitute reasonable suspicion); United States v. Harris, 39 F.3d 1262, 1268-69 (4th Cir. 1994) (officer's observation of man leaving apartment in a vehicle after confidential informant advised drug delivery was imminent constitutes reasonable suspicion to stop vehicle); United States v. Turner, 933 F.2d 240, 242-44 (4th Cir. 1991) (officer with experience in narcotics investigations had reasonable suspicion to stop and determine whether subject was "cooking" illegal drugs after observing her carry cup of water out of convenience store, walk to car, and lean over front seat as if hiding something); United States v. Moore, 817 F.2d 1105, 1107 (4th Cir. 1987) (officer's nighttime observation of man walking away from otherwise deserted area where burglar alarm had just gone off constitutes

reasonable suspicion to stop him).  However, the officer "must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity."  Wardlow, 528 U.S. at 123-24.

Facts supporting a finding of "reasonable suspicion" include: (1) presence in a high crime area, United States v. Black, 525 F.3d 359, 365 (4th Cir.), cert. denied, 129 S. Ct. 182 (2008); United States v. Christmas, 222 F.3d 141 (4th Cir. 2000), cert. denied, 531 U.S. 1098 (2001); (2) informant tips, including anonymous tips where there is independent corroboration, Alabama v. White, 496 U.S. 325, 329-30 (1990); United States v. Cortez, 449 U.S. 411, 417-18 (1981); United States v. Perrin, 45 F.3d 869, 871-72 (4th Cir. 1995); (3) lateness of the hour, Lender, 985 F.2d at 154; (4) observation by officers of what appears to be a drug transaction or other criminal conduct based upon their experience, Terry, 392 U.S. at 22-23; Adams v. Williams, 407 U.S. 143, 145 (1972) (even though officers could not see drugs, they were not required to "shrug [their] shoulders and allow a crime to occur" in the absence of probable cause); (5) evasive conduct, United States v. Vaughn, 700 F.3d 705, 711 (4th Cir. 2012)(breathing heavily along with other signs of nervousness) United States v. Smith, 396 F.3d 579, 585-87 (4th Cir.), cert. denied, 545 U.S. 1122 (2005); United States v. Humphries, 372 F.3d 653, 657-60 (4th Cir. 2004); United States v. Tate, 648 F.2d 939, 943 (4th Cir. 1981) (attempt by subjects to hide their faces); (6) "furtive behavior," United States v. Sims, 296 F.3d 284, 285-87 (4th Cir. 2002) (anonymous tip that black male wearing certain clothing had just fired handgun followed by observation of man fitting description engaged in "furtive behavior" constituted reasonable suspicion); and (7) "observing a bulge . . . in a suspect's clothing . . . even if the suspect was stopped only for a minor [traffic] violation." United States v. Baker, 78 F.3d 135, 137 (4th Cir. 1996); see also Black, 525 F.3d at 365.

Voluntary citizen-police encounters do not implicate the Fourth Amendment. Black, 525

F.3d at 364. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place." Florida v. Bostick, 501 U.S. 429, 434 (1991). Police do not implicate the Fourth Amendment simply by asking questions of citizens. Black, 525 F.3d at 364. In fact, officers may approach citizens on the street and speak with them without any level of suspicion or justification for their encounter. Id. Since these are voluntary encounters, citizens have a right to ignore the officer and walk away. Id. (citing Terry, 392 U.S. at 33). The fact that a police officer seeks cooperation or information does not amount to a seizure of the individual. Id.

However, if the police officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot" during a voluntary encounter or otherwise, the individual may be temporarily detained by the officer. Id. (citing Terry, 392 U.S. at 30). If the officer has a "reasonable belief that the citizen is armed and presently dangerous, the officer may conduct a protective frisk." Id. (citing Adams v. Williams, 407 U.S. 143, 146 (1972); see also U.S. v. Mayo, 361 F.3d 802, 806-07 (4th Cir. 2004).

Once reasonable suspicion exists, officers may detain a person to ascertain his identity and investigate further. See Adams v. Williams, 407 U.S. 143, 145-46 (1972) (police must be allowed to choose a middle ground between arrest and "shoulder-shrugging" when confronted with some suspicion of lawbreaking). Officers may conduct a limited protective frisk as they investigate. Terry, 392 U.S. at 27, 30. They may take such steps as are reasonably necessary to protect their personal safety and preserve the status quo during the stop. United States v. Hensley, 469 U.S. 221, 235 (1985). The fact that an individual might not feel free to leave during a Terry stop does not convert the stop into a custodial arrest, even if there is a show of force. see United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989) (handcuffing did not convert Terry stop into an

arrest).

Under the collective knowledge doctrine, officers conducting an investigation are entitled to rely on each other's knowledge of facts in determining whether a suspect is committing a crime. See United States v. Wells, 98 F.3rd 808, 810 (4th Cir. 1996)("And, although the agent who actually seized the weapon pursuant to the supervising agent's instructions had no personal knowledge that Wells was a convicted felon, it is sufficient that the agents collectively had probable cause to believe the weapon was evidence of a crime at the time of the seizure.").

B. **Discussion**

Vice officers were conducting an undercover investigation of suspected prostitution. Based upon prior surveillance, the officers were aware that (1) men were coming and going from the suspect apartment; (2) Defendant would leave the apartment whenever a suspected customer entered; (3) Defendant appeared to be a lookout; and (5) Defendant was observed in possession of a firearm.

Under the totality of the circumstances, Ortiz and Murphy had reasonable suspicion to believe that criminal activity was afoot here. Considering the collective knowledge of the investigating officers, they had reasonable suspicion to believe that Defendant was armed as well as aiding and abetting prostitution. When Ortiz and Murphy began conducting surveillance, they observed Defendant leave the apartment as he had done on previous occasions. They also observed him watching the apartment from time to time. As they approached, Detective Murphy saw the imprint of a firearm in Defendant's pocket. This fact alone would have supported a frisk under Terry. 392 U.S. at 30. In conversation with the officers, Defendant admitted that he was carrying a weapon. Finally, Defendant reached into his pocket twice despite the officers' orders to the contrary. These articulable facts amply support a finding of reasonable suspicion that criminal

activity was afoot and that the officers' actions were proper under the Fourth Amendment.

### III. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Defendant's "Motion to Suppress and Incorporated Memorandum of Law," Doc. 110, be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED**.

Signed: September 6, 2016

David S. Cayer
United States Magistrate Judge