# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## DOCKET NO. 3:15-cr-00166-FDW-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>vs. )<br>)<br>ISADORE JOHNSON, )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Defendant's Objections to the United States Magistrate Judge's Memorandum and Recommendation ("M&R") (Doc. No. 31). The M&R (Doc. No. 27) recommended that Defendant's Motion to Suppress (Doc. No. 17) be DENIED. For the reasons that follow, the Court OVERRULES Defendant's Objections, ACCEPTS AND ADOPTS the M&R as MODIFIED, and DENIES Defendant's Motion to Suppress.

## I. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). If a party timely files "specific written objections" to the proposed recommendations, the "district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3); see also 28 U.S.C. § 636. The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II. BACKGROUND

1

As an initial matter, Defendant does not lodge any specific objections to the procedural history or facts contained in the M&R. Therefore, the Court hereby adopts and incorporates by reference the portion of the M&R entitled "Factual Background and Findings."

In October 2014, Charlotte-Mecklenburg Police Department ("CMPD") officers were investigating reports of prostitution at an apartment complex. Prior to initiating an undercover operation, Detectives Ortiz-Trinidad and Murphy participated in a briefing conducted by other CMPD officers. At the briefing, the detectives learned of a complaint about prostitution at the apartment complex. They were shown a photograph of Michelle Cintron, the woman suspected of committing acts of prostitution in the apartment, and of Defendant, a suspected lookout who had previously been observed leaving the apartment and standing nearby when a suspected customer entered the apartment. The briefing also informed officers that Defendant may be armed and that he had previously been observed in possession of a firearm or holster at the apartment complex. Detective Ortiz-Trinidad testified that it is not uncommon for someone to act as a lookout outside a premises used for prostitution.

On October 23, 2014, an undercover officer called Ms. Cintron to set up an appointment posing as a customer. When the undercover officer arrived at the apartment, Detectives Ortiz-Trinidad and Murphy were conducting surveillance. Prior to the undercover officer entering the apartment, Defendant exited the apartment with a small child and two dogs and walked to a basketball court less than fifty yards away. Detective Murphy observed Defendant watching the apartment from time to time.

Out of concern for the safety of the operation, the detectives approached Defendant. Detective Murphy observed the imprint of a gun in Defendant's left pocket. After identifying themselves as police officers, Detective Ortiz asked Defendant if he had a weapon, to which

Defendant responded in the affirmative. Defendant also stated that he had identification. Defendant attempted to reach into his right pocket, and after the detectives ordered him twice to stop reaching into his pocket, the detectives grabbed Defendant. Defendant struggled with the detectives while uniformed officers arrived to assist in placing Defendant in handcuffs. An officer seized a firearm from Defendant's left pocket, a knife from his right pocket, and two loaded magazines. Defendant was charged in state court with aiding and abetting prostitution.

Defendant is charged here with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant filed a Motion to Suppress all evidence recovered by police during and after their encounter with Defendant, arguing the officers unlawfully seized Defendant in violation of the Fourth Amendment. (Doc. No. 17). The Magistrate Judge conducted an evidentiary hearing on August 9, 2016, and entered an M&R recommending that Defendant's Motion to Suppress be denied. (Doc. No. 27).

### III. ANALYSIS

Defendant objects to the M&R's specific findings that (1) officers had reasonable suspicion to believe that criminal activity was afoot, (2) officers had reasonable suspicion to believe that Defendant was aiding and abetting prostitution, and (3) Detective Murphy's observation of the imprint of a firearm in Defendant's pocket alone would have supported a frisk under Terry v. Ohio, 392 U.S. 1 (1968). (Doc. No. 31).

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Under Terry, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (citing Terry, 392 U.S. at 30). The reasonable suspicion standard is not particularly onerous, but requires "more than an inchoate and

unparticularized suspicion or 'hunch.'" Id. (quoting Terry, 392 U.S. at 27).

The Court determines the existence of reasonable suspicion by examining the "totality of the circumstances," considering "all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect." United States v. Crittendon, 883 F.2d 326, 328 (4th Cir. 1989); see also United States v. McCoy, 513 F.3d 405, 411 (4th Cir. 2008) ("[T]he Supreme Court has often counseled lower courts to give 'due weight' to the factual inferences drawn by police officers as they investigate crime, for the reasonable suspicion analysis is by its nature 'officer-centered.'" (internal citations omitted)). In making this determination, the Fourth Circuit has held that "[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). "Judicial review of the evidence offered to demonstrate reasonable suspicion must be commonsensical, focused on the evidence as a whole, and cognizant of both context and the particular experience of officers charged with the ongoing tasks of law enforcement." United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008).

During a Terry stop, police have authority to conduct a frisk of a suspect's outer clothing for weapons "where [the officer] has reason to believe that he is dealing with an armed and dangerous individual." Terry, 392 U.S. at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id.

On the other hand, voluntary citizen-police encounters do not implicate the Fourth Amendment. United States v. Black, 525 F.3d 359, 364 (4th Cir. 2008). Officers may approach citizens on the street and speak with them without any level of suspicion or justification for their encounter, id., and citizens have a right to ignore the officer and walk away, id. (citing Terry, 392

4

U.S. at 33). "The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." Florida v. Bostick, 501 U.S. 429, 434 (1991). A seizure occurs if, based on the totality of the circumstances, a "reasonable person would [not] have felt free to ignore [the officer's] questions and go on his way[.]" United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991). However, if during a voluntary encounter the police officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," the officer may temporarily detain the citizen. Black, 525 F.3d at 364 (citing Terry, 392 U.S. at 30).

Here, the circumstances show that the initial encounter between Defendant and Detectives Trinidad-Ortiz and Murphy was a voluntary police-citizen encounter. The detectives approached Defendant and identified themselves as police officers. They asked Defendant if he was armed, and Defendant responded that he was carrying a weapon. The detectives also asked Defendant if he had identification. There is no evidence that the detectives displayed their weapons or physically touched Defendant. Up to that point, the detectives did nothing to indicate that Defendant was compelled to talk to the detectives or that he could not leave the encounter and go on his way. Under the totality of the circumstances, a reasonable person would have felt free to leave and, therefore, the encounter was a voluntary police-citizen encounter that did not implicate the Fourth Amendment.

The encounter escalated to a seizure that receives Fourth Amendment scrutiny when Detective Trinidad-Ortiz grabbed Defendant because at that point a reasonable person would have believed that he was not free to leave. Defendant argues that law enforcement did not have reasonable suspicion to justify the seizure because they lacked reasonable suspicion that Defendant was acting as a lookout in Ms. Cintron's prostitution operation.

5

Defendant's argument ignores all the facts known to the detectives leading up to their encounter with Defendant. At the CMPD briefing, the detectives learned that prior information and surveillance indicated that men were coming and going from Ms. Cintron's apartment, that Defendant left the apartment and stood nearby when men arrived at the apartment, that Defendant was a lookout for Ms. Cintron, and that he carried a firearm. During the undercover operation, Detectives Ortiz-Trinidad and Murphy conducted surveillance and, as expected, observed Defendant leave when the undercover officer was about to enter the apartment. Consistent with the behavior law enforcement had previously observed, Defendant stayed nearby and appeared to be watching Ms. Cintron's apartment, acting as her lookout. Detective Ortiz-Trinidad testified that it is not uncommon for someone to act as a lookout outside a premises used for prostitution. When the detectives approached Defendant, Detective Murphy observed the imprint of a gun in Defendant's pocket. Under the totality of the circumstances, the facts known to the detectives at the time they approached Defendant established reasonable suspicion that Defendant was aiding and abetting Ms. Cintron's prostitution operation by acting as her armed lookout and that, therefore, criminal activity was afoot. Accordingly, even if the initial encounter with Defendant was not voluntary, the detectives were justified in approaching and briefly stopping Defendant under Terry.

In addition, based on Detective Murphy's observation of the imprint of a gun in Defendant's pocket and Defendant's admission that he had a gun, the detectives had a reasonable belief that Defendant was armed and presently dangerous, providing them with authority to frisk Defendant for weapons. When Defendant twice disobeyed the detectives' orders to refrain from reaching into his pocket, Detective Trinidad-Ortiz grabbed Defendant, who resisted and struggled with the detective. Once officers handcuffed Defendant, they retrieved the firearm that was

sticking out of his pocket. The detectives' conduct amounted to an intrusion no greater than a <u>Terry</u> frisk permitted by the Fourth Amendment.

Because the totality of the circumstances amply support a finding of reasonable suspicion that criminal activity was afoot and that Defendant was aiding and abetting prostitution by acting as a lookout, and because the detectives had a reasonable belief that their safety or that of others was in danger, the detectives' actions were proper under the Fourth Amendment. Therefore, the Court overrules Defendant's objections to the M&R that the officers lacked reasonable suspicion to stop and seize him.

Defendant also contends that the M&R erred in finding that Detective Murphy's observation of the imprint of a firearm in Defendant's pocket alone would have supported a frisk under <u>Terry</u>. Because the Court concludes that the detectives were justified in stopping and frisking Defendant under the totality of the circumstances, the Court need not reach that issue.

### IV. CONCLUSION

IT IS THEREFORE ordered that Defendant's Objections to the M&R are OVERRULED. The Court hereby ACCEPTS AND ADOPTS the M&R as MODIFIED and DENIES Defendant's Motion to Suppress (Doc. No. 17).

IT IS SO ORDERED.

Signed: November 16, 2016

Frank D. Whitney
Chief United States District Judge